UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
TAMPA DIVISION

BRENDA FARNSWORTH,

     Plaintiff,

                              CASE NO.:    8:15-cv-65-T-24-MAP

v.

HCA, INC., HEALTTRUST INC. – THE
HOSPITAL COMPANY, GALENCARE,
INC. d/b/a NORTHSIDE HOSPITAL, and
PARALLON BUSINESS SOLUTIONS, LLC

     Defendants.

_____/

## <u>ORDER</u>

This cause is before the Court on Defendants' Motion to Dismiss Plaintiff's Second Amended Complaint. Dkt. 32. Plaintiff Brenda Farnsworth filed a Response in Opposition. Dkt. 33. The Court, having reviewed the motion and being otherwise advised, concludes that Defendants' Motion to Dismiss should be GRANTED in part and DENIED in part. The motion is granted with respect to Defendant Parallon Business Solutions, LLC. The motion to dismiss is denied as to Galencare, Inc. d/b/a Northside Hospital ("Northside Hospital"), HCA, Inc., and Healthtrust Inc. – The Hospital Company.

## I.    <u>MOTION TO DISMISS STANDARD</u>

Federal Rule of Civil Procedure 8(a)(2) requires a complaint to make "a short and plain statement of the claim showing that the pleader is entitled to relief." A plaintiff must make sufficient factual allegations "to a state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 569 (2007). Plausibility requires that the "plaintiff pleads factual content that allows the court to draw the reasonable inference that the Residence Inn is liable for

the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678, 129 S. Ct. 1937, 1949, 173 L. Ed. 2d 868 (2009).  "The complaint need not include detailed factual allegations, but it must set forth more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." *Christman v. Walsh*, 416 F. App'x 841, 844 (11th Cir. 2011) (internal quotation marks and citation omitted).

The Eleventh Circuit suggests that district courts undertake a two-step approach in evaluating a motion to dismiss: "1) eliminate any allegations in the complaint that are merely legal conclusions; and 2) where there are well-pleaded factual allegations, assume their veracity and then determine whether they plausibly give rise to an entitlement to relief." *Am. Dental Ass'n v. Cigna Corp.*, 605 F.3d 1283, 1290 (11th Cir. 2010) (citation omitted).  Accordingly, all "legal conclusions must be supported by factual allegations." *Randall v. Scott*, 610 F.3d 701, 709-10 (11th Cir. 2010).

## II.    **BACKGROUND**

Plaintiff Brenda Farnsworth brings this False Claims Act ("FCA"), 31 U.S.C. §§ 3729-3732, lawsuit against her former employer and its related entities.  On August 1, 2011, Farnsworth began her six-month employment with Defendant Northside Hospital as Vice President of Quality and Risk Management. Dkt. 30, ¶ 11.  In that position, Farnsworth's responsibilities including the supervision of non-billing matters, and supervision of employees, including the infection control unit, the hospital's stroke coordinator, and core-management staff.  Farnsworth asserts that she had no responsibilities for compliance related to Medicare billing. *Id.*, ¶ 12.

Northside Hospital is a 288-bed teaching hospital. *Id.*, ¶ 9.  Defendant Parrallon Business Solutions, LLC ("Parallon") provides medical records personnel to Northside Hospital and is responsible for billing the Center for Medicare and Medicaid Services ("CMS") for medical

2

services provided at Northside Hospital. *Id.*, ¶ 10.  Parallon is a subsidiary of Defendants HCA, Inc. and Healthtrust, Inc.-The Hospital Company (together, "HCA").  *Id.*  HCA is also the parent corporation of Northside Hospital and directs the policies and procedures followed by the staff at Northside Hospital. *Id.*, ¶ 8.  During Farnsworth's six-month employment at Northside Hospital, approximately 50% of the patients at the hospital used Medicare or Medicaid benefits to pay for their medical services. *Id.*, ¶ 13.

On February 6, 2012, Farnsworth was placed on administrative leave.  On April 6, 2012, she filed a qui tam complaint under seal in this Court alleging that Defendants violated the FCA, including its retaliation provision.  *See United States ex. rel. Farnsworth v. Hosp. Corp. of Am.*, No. 8:12-cv-734-T-27TGW (M.D. Fla. April 6, 2012) at Dkt. 1.  The United States declined to intervene on May 20, 2013 and the complaint was unsealed.  *See* 8:12-cv-734-T-27TGW at Dkts. 2, 3.  Defendants moved to dismiss the complaint and, shortly thereafter, Farnsworth voluntarily dismissed the complaint.  8:12-cv-734-T-27TGW at Dkts. 14, 22.

Approximately one year later, on January 13, 2015, Farnsworth filed the complaint in this case (Dkt. 1), which contained the same FCA allegations as alleged in her previously dismissed 2012 case.   On February 3, 2015, Farnsworth filed the Amended Complaint, which purported to be limited to a retaliation claim under the FCA pursuant to 31 U.S.C. § 3730(h).  Dkt. 8.  The Amended Complaint was not limited to a retaliation claim and instead included a "plethora of extraneous, irrelevant, and inflammatory allegations that ha[d] no bearing on [Farnsworth's] FCA retaliation claim."  Dkt. 25 at 14.  The Court granted Defendants' motion to dismiss without prejudice and permitted Farnworth to file a Second Amended Complaint.  *Id.*  The Court instructed Farnsworth to focus on the instances in which she reported a billing violation to her superiors, and whether she did anything to oppose the billing violation.  Farnsworth was also instructed to be

3

specific as to which Defendant or Defendants engaged in the alleged incidents and practices that led to the filing of false claims. *Id.*

On June 19, 2015, Plaintiff filed the Second Amended Complaint. Dkt. 30. Defendants filed a Motion to Dismiss the Second Amended Complaint (Dkt. 32) and Farnsworth filed a response (Dkt. 33).

### A. <u>False Claims Act Retaliation</u>.

In the Second Amended Complaint, Farnsworth asserts a retaliation claim under the FCA. The False Claims Act is the primary statute upon which the government relies to recover losses caused by fraud perpetrated in the form of "false claims." *McNutt ex rel. United States v. Haleyville Med. Supplies, Inc.*, 423 F.3d 1256, 1259 (11th Cir. 2005). To encourage employees to report violations of the FCA, a whistleblower provision (31 U.S.C. § 3760(h)) gives employees the right to bring a retaliation claim against their employer if they are discriminated against in their employment because of their attempts to stop one or more of the false claims enumerated in the FCA. *Ingle v. Janick*, No. 2:14-cv-544-FtM-39DNF, 2014 WL 6469412, at *3 (M.D. Fla. Nov. 17, 2014). Even if the employee is not aware of the FCA at the time she attempted to stop the false claim, the employee still has the right to bring an FCA retaliation claim. *Id.* (citing *Childree v. UAP/GA CHEM, Inc.*, 92 F.3d 1140, 1146 (11th Cir. 1996) ("[N]othing in the language of § 3760 suggests that its protections are limited to those who were motivated by it.")).

In order to state an FCA retaliation claim, a plaintiff must allege three elements: (1) she was acting in furtherance of an FCA enforcement action or other efforts to stop violations of the FCA, *i.e.*, engaging in protected conduct, (2) the employer knew that the employee was engaged in the protected conduct, and (3) the employer was motivated to take an adverse employment action against the employee because of the protected conduct. *United States v. KForce Gov't Solutions,*

*Inc.*, No. 8:13-cv-1517-T-36TBM, 2014 WL 5823460, at \*10 (M.D. Fla. Nov. 10, 2014); *Mack v. Augusta–Richmond Cnty., Ga.,* 148 F. App'x 894, 896–97 (11th Cir. 2005). As amended in 2009, the FCA protects employees that have been "discharged, demoted, suspended, threatened, harassed, or in any other manner discriminated against in the terms and conditions of employment because of lawful acts done by the employee…in furtherance of an action under this section *or other efforts to stop one or more violations of this subchapter*." 31 U.S.C. § 3760(h)(1) (emphasis added).

The 2009 amendment to the FCA more broadly defines the scope of protected activity. The new language makes clear that section 3730(h) not only protects actions taken in furtherance of a potential or actual qui tam action, but also steps taken to remedy fraud through other means, such as by internal reporting to a supervisor or compliance department, or refusing to participate in unlawful activity. *See United States ex rel. Sanchez v. Lymphatx, Inc.*, 596 F.3d 1300, 1304 n. 5 (11th Cir. 2010) (noting that "Congress's recent amendment provides relief to any employee discharged for acting 'in furtherance of other efforts to stop 1 or more violations of this subchapter'"); 155 Cong. Rec. E1295, E1300 (daily ed. June 3, 2009) (statement of Cong. Berman) (stating that the amendments make "clear that this subsection protects not only steps taken in furtherance of a potential or actual qui tam action, but also steps taken to remedy the misconduct through means such as internal reporting to a supervisor or company compliance department and refusals to participate in the misconduct"). "No nexus to actual or threatened litigation is required, in contrast to the former version of the statute, which measured a retaliation claim by the likelihood of a substantive FCA suit being brought." *Bell v. Dean*, No. 2:09-cv-1082-WKW WO, 2010 WL 2976752, at \*1 (M.D. Ala. July 27, 2010). Although the amended statute is broader in the scope of protected activity, courts still assess whether the person's actions "were taken to stop one or

more violations of the Act."  Against this background, the Court sets forth the allegations in Farnsworth's Second Amended Complaint. [1]

### B.      The Second Amended Complaint: General Allegations

Farnsworth was responsible for supervising non-billing matters, and for supervising people at Northside Hospital, including Northside's infection control unit, the hospital's stroke coordinator, and all core-measure staff.[2]  In the Second Amended Complaint, Plaintiff sets out a number of instances that she alleges led to the submission of a false claim to Medicare and/or Medicaid.  Farnsworth reported the fraudulent billing practices to high-ranking members of Northside Hospital's management, including Steven Daugherty (CEO of Northside), Gary Searles (CFO of Northside), Audra Earle (COO of Northside), Maggie Miklos (Northside's Human Recourses Director), and to employees of HCA including Linda Lemonsteiner (HCA Division Vice President of Quality) and Jill Fainter[3] in HCA's leadership group in Nashville, Tennessee. Dkt. 30, ¶ 15.  Farnsworth alleges that she was fired in retaliation for reporting the fraudulent billing practices to members of management.  *Id.*, ¶ 16.

Farnsworth alleges that Defendants[4] routinely billed Medicare and Medicaid for the treatment of certain patients even though a teaching or attending physician was not physically present when the medical intern or resident performed the procedure.  *Id.*, ¶ 17.  Farnsworth

---

[1] Farnsworth alleges that Defendants retaliated against her because she had knowledge of false billings and tried to stop the hospital from submitting false bills to Medicare and Medicaid.  Because Farnsworth's retaliation allegations do not depend on allegations of fraud, the complaint need only be "a short and plain statement of the claim showing that [she is] entitled to relief."  Fed. R. Civ. P. 8(a); *see Sanchez,* 596 F.3d at 1304 (finding that the plaintiff's retaliation claim, which was based on internal reporting of unlawful actions, did not depend on allegations of fraud and needed only to meet the pleading standard required under Rule 8(a)); *Ingle v. Janick,* No. 2:14-cv-544-FtM-38DNF, 2014 WL 6469412, at *5 (same).

[2] It is not apparent to the Court the nature or composition of the core-measure staff.

[3] Farnsworth does not include any additional allegations specific to Ms. Fainter.

[4] Throughout the Second Amended Complaint, Farnsworth fails to separate the Defendants and make specific allegations against each one.

provides six specific examples of instances where a patient was never treated by an attending (or teaching) physician, but Defendants[5] billed Medicare or Medicaid for the medical services as though the attending physician had supervised the procedures performed by the residents and interns. *Id.*, ¶¶ 20, 21, 23, 24, 25, 26. Farnsworth discovered the billing incidents in early December 2011. *Id.*, ¶ 22, 27. Farnsworth reported the six incidents of fraudulent billing practices to Steven Daugherty (CEO of Northside), Gary Searles (CFO of Northside), Audra Earle (COO of Northside), and Maggie Miklos (Northside's Human Recourses Director) on a weekly basis from about December 15, 2011 until the end of January 2012. *Id.,* ¶¶ 22, 27. Farnsworth warned these members of Northside Hospital's management that the billing practices constituted the submission of a false claim to the government. *Id.*, ¶¶ 22, 27. Farnsworth also alleges that two meetings were held with division level staff, including Linda Lemonsteiner (HCA Division Vice President of Quality) and that she raised these same issues in those meetings. *Id.*, ¶¶ 22, 27. Farnsworth does not provide the dates of these meetings nor does she specifically allege what she told Ms. Lemonsteiner and whether she reported the false submission of claims to the government.

Farnsworth also alleges that Defendants[6] falsified medical records they submitted to Medicare and Medicaid for procedures and services ordered by a suspended physician, Dr. Hazem Al-Andary. *Id.*, ¶ 28(a)-(s). Farnsworth asserts that on nineteen occasions occurring on December 23, 29, and 30 of 2011, a Northside Hospital employee would enter orders into the computer that were ordered by Dr. Al-Andary, but falsely use other physicians' names as the ordering physician. *Id.* Defendants falsely billed Medicare and Medicaid for the services, which were ordered by Dr. Al-Andary while he was suspended. *Id.*, ¶ 29. Farnsworth learned of the incidents in late

---

[5] Farnsworth does not specify which Defendant or Defendants billed Medicare/Medicaid for these services.
[6] Again, Farnsworth does not make her allegations specific as to any Defendant and instead groups them all together.

December 2011 and early January 2012, objected to them, and reported the fraudulent billing to Steven Daugherty (CEO of Northside), Gary Searles (CFO of Northside), Audra Earle (COO of Northside), and Maggie Miklos (Northside's Human Recourses Director) on a weekly basis until the end of January 2012.  *Id., ¶* 30.  Farnsworth warned these members of Northside Hospital's management that the submission of these bills to Medicare and Medicaid constituted the submission of a false claim to the government.  *Id.*

Farnsworth asserts that Defendants[7] "double billed" Medicare and Medicaid for unauthorized medical research and for services that had been paid for by one patient, but used on a different patient who was also billed for the service.  According to Farnsworth, no research committee meetings were held after September 2011 and no one reported data to the hospital Board regarding the research trials.  *Id., ¶* 32.  Farnsworth states that this medical research was "unauthorized" and that she was directed by CEO Steven Daughtery to mislead the Board by not including the fact in her report to the Board that not all trials had appropriate approval.  *Id.* Farnsworth states that she reported the lack of preapproval to the Board.  *Id.* Defendants billed Medicare and Medicaid for the "ineligible medical services" even though payment had already been received from the research grant funds.  *Id.* Farnsworth also provides an example of an occasion when a service had been paid for by one patient, but was used on another patient, who was also billed for the service.  *Id.*, ¶ 34.  Farnsworth alleges that she learned of these "double billing" instances in early December 2011, objected to them, and reported the billing practices to Steven Daugherty (CEO of Northside), Gary Searles (CFO of Northside), Audra Earle (COO of Northside), and Maggie Miklos (Northside's Human Recourses Director) on a weekly basis from about December 15, 2011 until the end of January 2012.  *Id., ¶* 35.  Farnsworth warned these

---

[7] Farnsworth does make her allegations specific as to which Defendant or Defendants she is accusing of double billing.

members of Northside Hospital's management that the double billing practices constituted the submission of a false claim to the government.  Farnsworth also instructed Defendants[8] that they were obligated to pay back the Medicare reimbursements, which Defendants refused to do.  *Id.*

Finally, Farnsworth alleges that Northside Hospital encouraged its staff to compile fraudulent reports for patients before and after they were discharged in order to fraudulently bill Medicare and Medicaid for unnecessary tests and treatments.  *Id.*, ¶ 36.  Farnsworth provides two examples of such practices.  *Id.*, ¶¶ 37, 38.  Farnsworth alleges she became aware of the fraudulent billing practices in early December 2011, objected to them, and reported the billing practices to Steven Daugherty (CEO of Northside), Gary Searles (CFO of Northside), Audra Earle (COO of Northside), and Maggie Miklos (Northside's Human Recourses Director) on a weekly basis from about December 15, 2011 until the end of January 2012.  *Id.,* ¶ 40. Farnsworth warned these members of Northside Hospital's management that the fraudulent billing practices constituted the submission of a false claim to the government.  Farnsworth also instructed Defendants[9] that they were obligated to pay back the Medicare reimbursements they received related to the fraudulent billing practices, which Defendants refused to do.  *Id.*

### C.      Farnsworth's False Claims Act Retaliation Claim.

Farnsworth's FCA retaliation claim revolves around "for cause" surveys of Northside Hospital by Florida's Agency for Health Care Administration ("ACHA") surveyors and others. Approximately two weeks after Farnsworth began working at Northside Hospital, on August 25, 2011, ACHA surveyors conducted a for cause survey in response to complaints[10] filed with the

---

[8] Farnsworth does not state which Defendant or Defendants she instructed to pay back Medicare for the reimbursements.

[9] Farnsworth does not state which Defendant or Defendants she instructed to pay back Medicare for the reimbursements.

[10] Farnsworth asserts that she filed one of the complaints, but does not include who else filed the complaints, when the complaints were filed, or the nature of the complaints other than they were "serious."

agency.   Dkt. 30, ¶ 41.   During an October 6, 2011 survey, performed by Triennial Joint Commission[11], the surveyors found that Northside Hospital's Chief Nursing Officer, Pam Carroll, was not qualified for her position.   *Id.*, ¶ 42.   Although Farnsworth alleges she provided information to Triennial Joint Commission regarding the submission of false claims to the government, she does not allege that the surveyors made any conclusions or findings as to such false submissions.   Then, as a result of an unannounced December 21-22, 2011 ACHA for cause survey, which was conducted as a result of three complaints regarding patient care, ACHA discovered that medical records had been "substantially altered and amended in a suspicious manner." *Id.*, ¶ 43.   ACHA recommended a full CMS survey be conducted within 60 days.  *Id.*

On February 2, 2012, Farnsworth prepared a complaint to Kelly Furbee (Assistant Vice President of Human Resources of HCA in Nashville, Tennessee) to put her on notice of Northside Hospital's noncompliance with several laws, rules, and regulations, including false claims submitted to Medicare and Medicaid.  *Id.*, ¶ 44.[12]  Farnsworth states that the preparation of the complaint was outside the scope of her job duties but that she wanted to stop Defendants from engaging in illegal practices.  *Id.*  Farnsworth was told that Jennifer Barres (West Florida Division Vice President Human Resources)[13] would be in charge of investigating the complaint and an appointment to discuss the complaint was set for February 6, 2012.  *Id.*

Instead, on February 6, 2012, Farnsworth was placed on administrative leave and escorted from Northside Hospital.  *Id.*, ¶ 45.  Farnsworth was instructed not to contact any employees of

---

[11] Farnsworth does not include allegations explaining Triennial Joint Commission's role.

[12] Based on the allegations in the Second Amended Complaint, this complaint is the only way Farnsworth connects her internal reporting of false submissions to the government to HCA.   While Defendants attach a February 2, 2012 email to the motion to dismiss (Dkt. 32-11), the allegation is sufficiently pleaded and the Court will not consider extraneous evidence at the motion to dismiss stage.   Consideration of such evidence is a matter for summary judgment.

[13] Farnsworth does not allege the company that Ms. Barres worked for.

Northside Hospital. *Id.* On February 20, 2012, Northside Hospital offered Farnsworth a severance package, which she declined to accept. *Id.*, ¶ 47.

Beginning on February 29, 2012, ACHA conducted a three day CMS survey. *Id.,* ¶ 46. Although Farnsworth had rejected the severance package and was on administrative leave, she assisted the surveyors by telephone to help them find numerous discrepancies in the medical records, including the submission of false claims by Defendants[14] to the government. *Id.*, ¶ 46. ACHA found that "rules and laws" were violated at Northside Hospital.[15] *Id.*

In a letter dated March 9, 2012[16], the attorney for Northside Hospital claimed that Farnsworth had been placed on administrative leave for insubordination. *Id.*, ¶ 48. Farnsworth asserts that she was placed on leave because she had knowledge of fraudulent conduct at Northside Hospital, including false billings in violation of the FCA, which she had reported to Steven Daugherty (CEO of Northside), Gary Searles (CFO of Northside), Audra Earle (COO of Northside), and Maggie Miklos (Northside's Human Recourses Director) on a weekly basis from about December 15, 2011 until the end of January 2012. *Id.*, ¶ 49. Farnsworth seeks judgment against Defendants HCA and Northside Hospital for twice the amount of her back pay, together with special damages and compensatory damages. *Id.*, ¶ 54(a). Farnsworth asks to be reinstated in her position with the seniority she would have earned had the retaliation not occurred, or alternatively, be granted front pay. *Id.*, ¶ 54(b).

---

[14] Farnsworth does not identify which Defendant or Defendants were specifically responsible for such false submissions.

[15] Farnsworth does not allege what rules and laws were allegedly violated.

[16] The letter is not attached to the Second Amended Complaint.

### III.   DISCUSSION

#### A.   Northside Hospital

Unlike the First Amended Complaint, in the Second Amended Complaint, Farnsworth connects the incidents and practices about which she complains to allegations that she objected to such incidents and practices and reported them to members of Northside Hospital's management. Farnsworth's weekly complaints to management also included the fact that the incident or practice resulted in the submission of a false claim to the government.

As stated above, in order to state an FCA retaliation claim, a plaintiff must allege three elements: (1) she was acting in furtherance of an FCA enforcement action or other efforts to stop violations of the FCA, *i.e.*, engaging in protected conduct, (2) the employer knew that the employee was engaged in the protected conduct, and (3) the employer was motivated to take an adverse employment action against the employee because of the protected conduct.  *KForce Gov't Solutions,* 2014 WL 5823460, at *10.  The FCA protects employees that have been "discharged, demoted, suspended, threatened, harassed, or in any other manner discriminated against in the terms and conditions of employment because of lawful acts done by the employee…in furtherance of an action under this section *or other efforts to stop one or more violations of this subchapter*." 31 U.S.C. § 3760(h)(1) (emphasis added).

It does not require extensive analysis to conclude that Farnsworth states a claim for FCA retaliation against Northside Hospital.  Farnsworth lays out numerous incidents and practices that led to the submission of false claims to the government, including: (1) routine billing of Medicare and Medicaid for treatment of patients when a teaching or attending physician was not present; (2) falsification of medical records submitted to Medicare and Medicaid for procedures and services ordered by a suspended physician; (3) double billing of Medicare and Medicaid for unauthorized

medical research and for services that had already been paid for by one patient but used on a different patient who was also billed for the service; and (4) encouragement by Northside Hospital for its staff to complete fraudulent patient reports before and after discharge in order to fraudulently bill Medicare and Medicaid for unnecessary tests and treatments.  Farnsworth alleges that she acted to stop these incidents and practices and resulting unlawful billing practices by internally reporting the incidents and practices to specific members of Northside Hospital's management on a weekly basis from about December 15, 2011 to the end of January 2012.  These internal reports indicate an effort to stop or prevent continued violations of the FCA.  For example, in *Bell v. Dean*, No. 2:09-cv-1082-WKW WO, 2010 WL 2976752, at *1 (M.D. Ala. July 27, 2010), the court found that an employee's "explicit threats to report what he viewed as unauthorized uses of funds, coupled with documents that would likely constitute false claims if they were submitted to the government" indicated that the employee's actions were undertaken in an effort to stop and/or prevent a violation of the FCA and were sufficient to state a claim for FCA retaliation.  The same can be said here.

Second, Farnsworth's employer, Northside Hospital, was aware that she was trying to stop the FCA violations because Farnsworth was reporting the incidents and practices to members of the hospital's management on a weekly basis.  "[T]he act of internal reporting itself suffices as both the effort to stop the FCA violation and the notice to the employer that the employee is engaging in protected conduct."  *Manfield v. Alutiiq Int'l Solutions, Inc.*, 851 F. Supp. 2d 196, 204 (D. Me. 2012).

Finally, Farnsworth sufficiently draws the connection between her efforts to stop the unlawful billing practices to her eventual termination.  "The FCA does not require a plaintiff be terminated solely because he engaged in protected activity.  Rather, the employer need only be

motivated, at least in part by the employee's engaging in protected activity." *Manfield*, 851 F. Supp. 2d at 204 (citations omitted).  Farnsworth alleges that she was placed on administrative leave not for insubordination (the stated reason by Northside Hospital for the leave), but because she had direct knowledge of the fraudulent conduct occurring at Northside Hospital, including false billings in violation of the FCA.  This allegation is sufficient. The Court denies the motion to dismiss with respect to Defendant Northside Hospital.

### B.   HCA (HCA, Inc. and Healthtrust Inc. – The Hospital Company)

With respect to Defendant HCA, Farnsworth includes an allegation that two meetings were held with "division level staff" including HCA Vice President Linda Lemonsteiner and that Farnsworth raised the issue of unsupervised interns and medical residents treating patients without an attending physician present at the meetings.  Dkt. 30, ¶ 22, 27.  However, Farnsworth does not allege that she raised the issue of fraudulent billings to Ms. Lemonsteiner.  Therefore, these allegations are not sufficient to state a claim against HCA.

Next, Farnsworth alleges that the February 2, 2012 complaint she submitted to HCA's Kelly Furbee included her concerns regarding the hospital's noncompliance with laws, rules, and regulations and the false submission of claims to the government.  This allegation is sufficient to state a claim against the HCA Defendants because (1) it is an internal report regarding the violation of laws and false submission of claims to the government; (2) it put HCA on notice of Farnsworth's attempts to stop violations of the FCA; and (3) Farnsworth alleges that she was terminated due to her knowledge of the fraudulent conduct occurring at the hospital, including the false submission of claims to the government.  This allegation is sufficient to state a claim against HCA.[17]  The

---

[17] The Court recognizes that Defendants attach an e-mail that contradicts Farnsworth's allegations. However, the Court cannot consider matters outside of the complaint on a Rule 12(b)(6) motion to dismiss.

Court denies the motion to dismiss with respect to HCA, Inc., and Healthtrust Inc. – The Hospital Company.

### C.      Parallon Business Solutions, LLC

As to Defendant Parallon, although Farnworth initially asserts that Parallon was responsible for submitting Medicare and Medicaid bills, the allegations in the Second Amended Complaint that concern internal reporting and fraudulent submission of bills to the government do not include Parallon.  This is Plaintiff's third opportunity to assert claims against each of the Defendants and despite the Court's clear guidance that she must do so in order to survive a motion to dismiss, Plaintiff has not done so as it pertains to Parallon.  Farnworth does not make any substantive allegations regarding Parallon as it relates to her FCA retaliation claim.  The allegations in the Second Amended Complaint as to Parallon "do not contain sufficient factual matters, accepted as true, to state a claim for relief that is plausible on its face." *Librizzi v. Ocwen Loan Servicing, LLC*, No. 15-cv-60107, 2015 WL 4761647, at *5 (S.D. Fla. Aug. 13, 2015) (quoting *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009)).  The Court dismisses the claim against Parallon with prejudice.

### IV.      CONCLUSION

For the foregoing reasons, the Court:

(1)      Grants Defendants' motion to dismiss with respect to Defendant Parallon and dismisses the claim against Parallon with prejudice; and

(2)      Denies Defendants' motion to dismiss with respect to Northside Hospital, HCA, Inc., and Healthtrust Inc. – The Hospital Company.

The Clerk is directed to dismiss Defendant Parallon Business Solutions, LLC with prejudice.

15

**DONE AND ORDERED** at Tampa, Florida, this 8th day of September, 2015.

SUSAN C. BUCKLEW
United States District Judge

**Copies furnished to:**
Counsel of Record